IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AVRIL CORN and IZRAA EL,** for themselves and all others similarly situated, Plaintiffs, v. **ODIN PROPERTIES LLC,** Defendant. | Case No. 25-cv-5517 <br><br> **JURY TRIAL DEMANDED** |

# COLLECTIVE / CLASS ACTION COMPLAINT

Avril Corn and Izraa El ("Plaintiffs"), by and through their undersigned counsel, hereby make the following allegations against Odin Properties LLC ("Defendant") concerning their acts and status upon actual knowledge, and concerning all other matters upon information, belief, and the investigation of their counsel:

## NATURE OF THE ACTION

1. Plaintiffs contend Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA"), and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq*. ("MWA"), by knowingly requiring or allowing full-time, hourly Leasing Agents and Maintenance Techs to work during their unpaid meal breaks without properly tracking this work or paying overtime premium wages owed for it.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction." This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331 because Plaintiffs' claims arise under the FLSA.

1

3. This Court has supplemental jurisdiction over Plaintiffs' MWA claim pursuant to 28 U.S.C. § 1367, because this claim arises from the same occurrences and transactions as Plaintiffs' FLSA claim (*i.e.,* Defendant's failure to pay all wages owed, including overtime wages, at the proper rate for all hours worked) and is so related to this claim as to form part of the same case or controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs reside in this District, worked for Defendant in this District, and suffered the losses at issue in this District, and because Defendant is headquartered in this District, has significant business contacts in this District, and engaged in the wrongful conduct at issue in this District.

## THE PARTIES

5. Plaintiff Avril Corn is an adult citizen of Pennsylvania who lives in an Odin Properties apartment in Philadelphia County (PA). Plaintiff Corn worked as a full-time, hourly Leasing Agent for Defendant from approximately June 2024 to August 2025. Plaintiff Corn was the only person on-site in Defendant's Germantown (Philadelphia) office and was solely responsible for multiple activities at two of Defendant's apartment buildings in Philadelphia (Kenyon Lofts and Vernon Lofts), including: touring the grounds, buildings, and units she was responsible for to identify issues and generate work orders; communicating with maintenance staff about work orders and repairs; communicating with tenants about issues with their units, buildings, and leases; ordering supplies; collecting rent payments; managing evictions; following-up with prospective tenant leads; communicating with prospective tenants about available units; scheduling showings; preparing units to be shown; showing available units; managing lease applications and closings for new tenants, and meeting with managers,

2

Maintenance Techs, tenants, and prospective tenants. Plaintiff Corn has submitted a Consent Form to join this lawsuit (Exhibit A).

6. Plaintiff Izraa El is an adult citizen of Pennsylvania who lives in Delaware County (PA). Plaintiff El worked as a full-time, hourly Maintenance Tech for Defendant from approximately May 2024 to June 2025. Plaintiff El performed maintenance duties at five of Defendant's apartment buildings in Philadelphia (1201 Spruce, Bainbridge Lofts, Dickinson Lofts, Overbrook Lofts, and Scotts Mills) that included: communicating with Leasing Agents, Tenants, Assistant Managers and Managers about issues with units and buildings; communicating with maintenance staff about work orders and repairs; performing all maintenance and repair work (*e.g.,* electrical, HVAC, painting, plumbing, etc…) needed in all commercial and residential spaces; purchasing materials and supplies; and responding to work orders. Plaintiff El has submitted a Consent Form to join this lawsuit (Exhibit B).

7. Defendant is a Pennsylvania Domestic Limited Liability Company with a principal place of business in Philadelphia, PA. Defendant owns and manages dozens of residential apartment buildings in Florida, Illinois, Indiana, Michigan, Mississippi, Missouri, New Jersey, Ohio, Pennsylvania, Tennessee, and Texas. *See https://odinproperties.com/representative-properties/* (accessed Aug. 15, 2025). During the relevant period, Defendant was an "employer" of Plaintiff and the FLSA Collective and Pennsylvania Class members, and was actively engaged in the conduct described herein.

**BACKGROUND FACTS**

8. Throughout the relevant period, Defendant maintained and circulated an Employee Handbook containing Work Hours and Payroll policies that established a 40-hour workweek made up of five 8½-hour workdays, each with a 30-minute, unpaid meal break.

9. Defendant's Employee Handbook contained an Overtime policy that promised to pay overtime premium wages based on actual hours worked over 40 hours per workweek, but required a supervisor's prior authorization for all overtime work and threatened discipline for unauthorized overtime.

10. Defendant's Employee Handbook contained Timekeeping and Payroll policies that prohibited "off-the-clock" work, advised that authorized personnel would review – and could change – hourly employees' time records each week, and indicated that any time or pay issues should be presented to a manager or the Human Resources department.

11. Throughout the relevant period, Defendant maintained and circulated an Operations Manual containing a Timekeeping procedure that specified hourly employees would be automatically clocked out at 12:00 PM and clocked back in at 12:30 PM for an unpaid meal break.  This procedure also advised that employees who have been inaccurately paid should contact their immediate supervisor or the Human Resources department.

12. In keeping with its written policies and procedures, Defendant automatically deducted 30 minutes from each day its hourly employees worked, representing their unpaid meal break.  Defendant took this deduction every day without doing anything to confirm any hourly employee had received a full, uninterrupted meal break.

13. Despite knowing that hourly employees were not paid for their meal breaks, Defendant and its managers routinely allowed or required hourly employees to work during or through their unpaid meal breaks.

14. Defendant and its managers knew or should have known that Plaintiffs and the FLSA Collective routinely performed unpaid meal break work because: they assigned, communicated about, directed, or supervised this work; this work routinely occurred in plain

sight on Defendant's premises; they had access to e-mails, phone records, work orders, and video recordings confirming the performance of this work; they routinely checked the location and status of this work on tracking apps to confirm it had been done; and the FLSA collective regularly communicated with managers and Human Resources staff about issues relating to meal break work and pay.

15.   Instead of taking affirmative steps to record, approve, or ensure hourly employees' meal break work was properly paid, Defendant's managers fostered a culture in which unpaid meal break work was an expected part of the job, to be done without additional pay, employees were encouraged to "eat when they could" instead of taking a full meal break, and claiming overtime wages for meal break work carried a risk of discipline or termination.

**FACTS RELATING TO THE NAMED PLAINTIFFS**

16.   Plaintiffs are familiar with Defendant's Employee Handbook and the Work Hours, Payroll, Overtime, Timekeeping and Payroll policies in it, because Defendant gave them a copy of this Handbook and trained them on these policies, and they occasionally referenced it during their employment.

17.   Plaintiffs are familiar with Defendant's Operations Manual and the Timekeeping procedure in it, because Defendant gave them a copy of this Manual and trained them on these procedures, and they occasionally referenced it during their employment.

18.   Plaintiffs are familiar with Defendant's automatic meal break deduction from Defendant's Employee Handbook and Operations Manual, but also because they had a 30-minute meal break deducted from their work time each day regardless of whether they worked during or through their meal break and discussed the automatic deduction with their managers and co-workers.  In addition, Plaintiffs worked during or through their meal break virtually every

day, communicated with other hourly employees about working during meal breaks, and discussed this work with Defendant's managers and Human Resources staff.

19. Because of Defendant's staffing decisions, the volume and type of work Plaintiffs were given to complete, and the unpredictable demands of this work, Plaintiffs performed approximately 25-30 minutes of work during virtually all of their unpaid meal breaks.

20. Defendant and its managers knew or should have known Plaintiffs regularly worked through their meal breaks because: they assigned, communicated about, directed, or supervised this work; this work routinely occurred in plain sight on Defendant's premises; they had access to e-mails, phone records, work orders, and video recordings confirming the performance of this work; they routinely checked the location and status of this work on tracking apps to confirm it had been done; and Plaintiffs regularly communicated with their managers and Human Resources staff about issues relating to meal break work and pay.

21. When Plaintiff Corn complained to her Regional Manager and the Human Resources department about issues with meal break work and pay, they offered to "look into the situation and get back to her." However, instead of responding to her complaints, by paying for her unpaid work or otherwise, Defendant's managers started to write-up Plaintiff Corn for unfounded policy violations that eventually led to her termination.

22. When Plaintiff El's supervisor confronted him about being away from work during his meal breaks, Plaintiff El explained he often missed his meal breaks because of work. After this discussion, instead of paying for his unpaid work or otherwise, Defendant's supervisor started to write-up Plaintiff El for unfounded policy violations that eventually led to his termination.

6

23. Based on Defendant's common Policies and Procedures, the similarity of work required of Leasing Agents and Maintenance Techs in Defendants' apartment buildings, Plaintiffs' similar experience with meal break work and pay issues, and their similar interactions with co-workers and Defendant's managers about these issues, Plaintiffs believe the meal break work and pay issues pled in this Complaint are common among, and shared by, all of Defendant's Leasing Agents and Maintenance Techs.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24. Plaintiffs bring their FLSA claim on a collective basis pursuant to 29 U.S.C. § 216(b) for all full-time, hourly Leasing Agents and Maintenance Techs Defendant employed during the maximum limitations period who worked during one or more unpaid meal breaks in a 40-hour week without receiving all overtime wages owed for this work (the "FLSA Collective"). Plaintiffs reserve the right to amend this definition as necessary.

25. Plaintiffs are members of the FLSA Collective because they were employed by Defendant on a full-time, hourly basis during the relevant period, worked during virtually all of their unpaid meal breaks, and were not paid overtime wages for any of this work.

26. Although Plaintiffs and the FLSA Collective members worked in different positions, had different supervisors, and worked in different locations, this action may be properly maintained as a collective action on behalf of the FLSA Collective because, among other things:

    a. Plaintiffs and the FLSA Collective members all worked for Defendant;

    b. Plaintiffs and the FLSA Collective members all worked under the common Policies and Procedures at issue in this case, were promised one unpaid, 30-minute meal break per shift and had 30 minutes automatically deducted from each shift they worked,

7

        regardless of whether they worked during or through their meal break;

    c.    Defendant maintained common payroll systems and practices with respect to Plaintiffs and the FLSA Collective members that did not cause or require wages to be properly paid for all missed or shortened meal breaks;

    d.    Plaintiffs and the FLSA Collective members received common training from Defendant relating to the matters at issue in this case; and

    e.    Plaintiffs and the FLSA Collective members were all subjected to a culture in which unpaid meal break work was an expected part of the job, to be done without additional pay, employees were encouraged to "eat when they could" instead of taking a full meal break, and claiming overtime wages for meal break work carried a risk of discipline or termination.

27.    Plaintiffs and the FLSA Collective members do not meet any test for exemption under the FLSA.

28.    Plaintiffs estimate the FLSA Collective, including both current and former employees over the relevant period, will include at least several hundred people. The precise number of FLSA Collective members should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

29.    Plaintiffs bring their MWA claim as a class action pursuant to Fed. R. Civ. P. 23 for all people Defendant employed as full-time, hourly Leasing Agents or Maintenance Techs in Pennsylvania and all Pennsylvania residents who worked for Defendant as full-time, hourly Leasing Agents or Maintenance Techs during the maximum limitations period (the "PA Class"). Plaintiff reserves the right to amend this definition as necessary.

30. Plaintiff Corn is a member of the PA Class, because she is a Pennsylvania resident who worked for Defendant in Pennsylvania as a full-time, hourly Leasing Agent during the relevant period.

31. Plaintiff El is a member of the PA Class, because he is a Pennsylvania resident who worked for Defendant in Pennsylvania as a full-time, hourly Maintenance Tech during the relevant period.

32. The members of the PA Class are so numerous their joinder would be impracticable. Plaintiffs estimate that, during the relevant period, Defendant employed over 100 people who either lived or worked in Pennsylvania as full-time, hourly Leasing Agents or Maintenance Techs.

33. There are material questions of law or fact common to the members of the PA Class because, as discussed throughout this filing, Defendant engaged in a common course of conduct that violated their legal rights. Any individual questions of law or fact that Plaintiffs' claims present will be far less central to this litigation than the many common questions, including:

    a. whether Plaintiffs and the PA Class were subject to common policies defining the work day, work week, and pay period the same way for all hourly employees;

    b. whether Plaintiffs and the PA Class were subject to a common policy promising one unpaid 30-minute meal break per shift;

    c. whether Plaintiffs and the PA Class were subject to a common policy promising to pay all hourly employees at a time-and-a-half overtime premium rate for all hours they work over 40 per workweek;

    d. whether Defendant commonly represented to the PA Class that they would be paid at the appropriate rate for all hours they work;

9

      e.      whether Plaintiffs and the PA Class were required to prioritize their work-related responsibilities over their entitlement to an uninterrupted meal break;

      f.      whether Defendant required Plaintiffs and the PA Class to accurately track their meal break work time;

      g.      whether Defendant denied Plaintiffs and the PA Class overtime premium wages owed under the MWA; and

      h.      whether Defendant should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

34. Plaintiffs' claims are typical of the claims belonging to the PA Class. Plaintiffs and the PA Class members are similarly-situated because they were all subject to the common Policies and Procedures identified above, and were denied legally-required wages as a result of Defendant's common course of wrongful conduct.

35. Plaintiffs will fairly and adequately assert and protect the interests of the PA Class under the criteria set out in Pa. R. Civ. P. 1709 because: there is no apparent conflict of interest between Plaintiffs and the PA Class; Plaintiffs' Counsel have successfully prosecuted many complex class actions, including wage and hour class actions under the MWA, and will adequately prosecute these claims; and Plaintiffs have secured adequate financial resources to assure the interests of the PA Class members will not be harmed because their counsel have agreed to advance the costs and expenses of litigation contingent upon the outcome of this litigation consistent with Pa. R. Prof. Conduct 1.8(e)(1).

36. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy under the criteria in Pa. R.

Civ. P. 1708 because issues common to the PA Class (including whether Defendant's timekeeping and compensation policies and practices comported with the MWA) predominate over any questions affecting individual members; no difficulties are likely to be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims

37. Given the material similarity of the claims belonging to the PA Class, even if every member could afford to litigate a separate claim, this Court should not countenance or require the filing of scores of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action will permit the efficient supervision of these claims, give rise to significant economies of scale for the Court and the Parties, and result in a binding, uniform adjudication on all issues.

38. Allowing Plaintiffs' claims to proceed as a class action is also appropriate because the MWA expressly permits private class action lawsuits for unpaid regular and overtime wages.

## COUNT I
## Violation of the FLSA

39. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

40. Plaintiffs and the FLSA Collective are "employees" of Defendant as defined by the FLSA, 29 U.S.C. § 203(e)(1), and are not exempt from the FLSA's protections for any reason.

41. The FLSA requires employers to pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206-207.

42. The FLSA does not specifically define the term "work", *id.,* but the Department of Labor has promulgated regulations containing "Principles for Determination of Hours Worked" to inform this issue. *See* 29 C.F.R. §§ 785.11-785.13. These Principles plainly state that any work an employer "suffers or permits" to be performed at the job site (like Plaintiffs' meal break work) must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed. *Id.*

43. During the relevant period, Defendant maintained a written policy that promised Plaintiff and the collective group members one 30-minute unpaid meal break per shift. Having made this promise, Defendant was obligated to ensure either that Plaintiffs and the FLSA Collective were completely relieved from all work-related duties during their unpaid meal break, or that they accurately tracked and recorded all their meal break work and received wages calculated at the appropriate rate for every missed or shortened break.

44. During the relevant period, Defendant did not require Plaintiffs and the FLSA collective to "clock out" before starting a meal break or "clock in" after their meal break was over. As a result, Defendant did not create accurate, contemporaneous records showing whether Plaintiffs and the FLSA Collective received a full meal break.

45. During the relevant period, Defendant regularly suffered or permitted Plaintiffs and the FLSA collective to perform more than *de minimis* work during virtually all of their 30-minute unpaid meal breaks.

46. During the relevant period, Defendant's managers fostered a culture in which unpaid meal break work was an expected part of the job, to be done without additional pay, employees were encouraged to "eat when they could" instead of taking a full meal break, and claiming overtime wages for meal break work carried a risk of discipline or termination.

47. Defendant suffered or permitted Plaintiff Corn to perform more than *de minimis* work during virtually all of her unpaid meal breaks. Plaintiff Corn typically worked during her meal breaks to perform work that included: touring the grounds, buildings, and units she was responsible for to identify issues and generate work orders; communicating with maintenance staff about work orders and repairs; communicating with tenants about issues with their units, buildings, and leases; ordering supplies; collecting rent payments; managing evictions; following-up with prospective tenant leads; communicating with prospective tenants about available units; scheduling showings; preparing units to be shown; showing available units; managing lease applications and closings for new tenants, and meeting with managers, Maintenance Techs, tenants, and prospective tenants.

48. Defendant suffered or permitted Plaintiff El to perform more than *de minimis* work during virtually all of his unpaid meal breaks. Plaintiff El typically worked during his meal breaks to perform work that included: communicating with Leasing Agents, Tenants, Assistant Managers and Managers about issues with units and buildings; communicating with maintenance staff about work orders and repairs; purchasing materials and supplies; performing all maintenance and repair work (*e.g.,* electrical, HVAC, painting, plumbing, etc…) needed in all commercial and residential spaces; and responding to work orders.

49. During the relevant period, Defendant and its managers knew or should have known that Plaintiffs and the FLSA Collective routinely performed unpaid meal break work

because: they assigned, communicated about, directed, or supervised this work; this work routinely occurred in plain sight on Defendant's premises; they had access to e-mails, phone records, work orders, and video recordings confirming the performance of this work; they routinely checked the location and status of this work on tracking apps to confirm it had been done; and the FLSA collective regularly communicated with managers and Human Resources staff about issues relating to meal break work and pay.

50. Despite knowing that Plaintiffs and the FLSA Collective were routinely working during their unpaid meal breaks, Defendant did not take steps to accurately track this meal break work, or pay all wages owed for it.

51. During the relevant period, Plaintiffs and the FLSA Collective have been harmed as a direct and proximate result of Defendant's unlawful conduct, because Defendant has regularly and consistently deprived Plaintiffs and the FLSA Collective of overtime wages owed for meal break work they performed in workweeks of 40 hours or more.

52. For all the reasons stated above, Plaintiffs and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

**COUNT II**
**Violation of the Pennsylvania Minimum Wage Act**

53. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

54. Defendant is a covered employer required to comply with the MWA's mandates.

55. Plaintiffs seek to recover "wages" as that term is defined by the MWA.

56. Plaintiffs and the PA Class are employees entitled to the MWA's protections, and, during the relevant period, were not exempt from receiving wages payable under the MWA or its enabling Regulations for any reason.

57. The MWA and its enabling Regulations require employers to pay all wages owed for every hour worked and to pay overtime compensation at a rate "not less than one and one-half times an employee's regular rate" for all hours worked over 40 in a seven-day "workweek".

58. During the relevant period, the MWA provided that "any agreement between the employer and the worker" could not serve as a defense to civil actions brought to recover wages owed under the Act.

59. During the relevant period, Defendant violated the MWA wage payment requirement by knowingly suffering or permitting Plaintiffs and the PA Class to work during their unpaid meal breaks without accurately tracking this work or paying all wages owed for it and also actively discouraged Plaintiffs and the PA Class from submitting all their meal break work time for payment or pursuing pay for all their meal break work.

60. During the relevant period, Defendant and its managers knew or should have known that Plaintiffs and the FLSA Collective routinely performed unpaid meal break work because: they assigned, communicated about, directed, or supervised this work; this work routinely occurred in plain sight on Defendant's premises; they had access to e-mails, phone records, work orders, and video recordings confirming the performance of this work; they routinely checked the location and status of this work on tracking apps to confirm it had been done; and the FLSA collective regularly communicated with managers and Human Resources staff about issues relating to meal break work and pay.

61. Defendant's failure to pay Plaintiffs and the PA Class all wages owed for their meal break work violated the MWA and caused them to suffer economic harm.

62. During the relevant period, there was no language in the MWA, no exception to the MWA or its enabling Regulations, or any applicable provision elsewhere in Pennsylvania law

that permitted Defendant to avoid paying Plaintiffs and the PA Class for their meal break work. As a result, Defendant had no good faith justification or defense for failing to pay Plaintiffs and the PA Class the wages at issue here.

WHEREFORE, Plaintiffs respectfully pray for an Order:

a. Appointing Stephan Zouras, LLC as counsel for the FLSA Collective and PA Class;

b. Requiring Defendant to provide a list of all names and current (or best known) addresses of all people meeting the FLSA Collective and PA Class definitions during the relevant period;

c. Authorizing Class Counsel to issue a notice informing the Class members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

d. Certifying this claim to proceed as a collective and class action;

e. Finding Defendant willfully violated the applicable provisions of the FLSA by failing to pay all required wages to Plaintiffs and the FLSA Collective;

f. Finding Defendant willfully violated the applicable provisions of the MWA by failing to pay all required wages to Plaintiffs and the PA Class;

g. Granting judgment in favor of Plaintiffs and the FLSA Collective members, and against Defendant, on their FLSA claim;

h. Granting judgment in favor of Plaintiffs and the PA Class members, and against Defendant, on their MWA claim;

i. Awarding all available compensatory damages, pre-judgment interest, and liquidated damages in an amount to be determined;

j. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

    k.    Requiring Defendant to desist from the wage and hour violations alleged in this Complaint;

    l.    Awarding any further relief the Court deems just and equitable; and

    m.    Maintaining jurisdiction over this action after judgment or verdict to ensure Defendant's compliance with the foregoing.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in the above-captioned matter.

Respectfully submitted,

Dated: September 25, 2025    /s/ David J. Cohen
David J. Cohen
STEPHAN ZOURAS, LLC
604 Spruce Street
Philadelphia, PA 19106
215-873-4836
dcohen@stephanzouras.com

James B. Zouras (*pro hac vice*)
STEPHAN ZOURAS, LLC
222 W. Adams Street, Suite 2020
Chicago, IL  60606
312-233-1550
jzouras@stephanzouras.com

*Counsel for Plaintiffs*